UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHELLE LEE SAUNDERSON,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

18-CV-1242
DECISION & ORDER

On November 7, 2018, the plaintiff, Michelle Lee Saunderson, brought this action under the Social Security Act. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On May 28, 2019, Saunderson moved for judgment on the pleadings, Docket Item 7; on September 27, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 14; and on October 18, 2019, Saunderson replied, Docket Item 16.

For the reasons stated below, this Court grants Saunderson's motion in part and denies the Commissioner's cross-motion.[1]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer to only the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## **DISCUSSION**

### I. **ALLEGATIONS**

Saunderson argues that the ALJ erred in two ways. Docket Item 7-1 at 2. She argues first that the ALJ erred in rejecting the opinions of Saunderson's treating physicians and second that the ALJ improperly relied on his own lay judgment in determining Saunderson's RFC. *Id.* This Court agrees that the ALJ erred prejudicially and therefore remands to the Commissioner for revaluation of the opinions of Saunderson's treating physicians and development of the medical record regarding Saunderson's RFC.

## II. ANALYSIS

### A. The Treating-Physician Rule

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are most able to "provide a detailed, longitudinal picture of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 Fed. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, "the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (alteration omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

3

Here, the ALJ considered the opinions of three of Saunderson's treating physicians: James J. Kelly, D.O.; Dale R. Wheeler, M.D.; and Gerald L. Peer, M.D. *See* Docket Item 5 at 21-24. But, as explained in more detail below, the ALJ failed to explicitly address the *Burgess* factors for any of those physicians.

### 1. Dr. Kelly

Dr. Kelly, an orthopedist, treated Saunderson from November 2012 through September 2014. *See* Docket Item 5 at 267-94, 382-417. In August 2013, he opined that Saunderson "had 10 percent loss for her right arm for lateral epicondylitis and 23 percent loss in her left arm for lost wrist motion." *Id.* at 21. He further opined that Saunderson "had 50 percent permanent impairment" and "should lift or carry less than 20 pounds." *Id.*

The ALJ gave "limited weight to [Dr. Kelly's] opinion that [Saunderson] remained under permanent partial disability restrictions." *Id.* Moreover, "[t]o the extent that Dr. Kelly's opinion [wa]s inconsistent with [the ALJ's RFC], the [ALJ gave] little weight to that inconsistency, as the [ALJ did] not find that [Saunderson's] medical records show[ed] that she has an impairment or combination of impairments that persisted at a level of severity that would preclude work within the [RFC] adopted here." *Id.*

But the ALJ did not evaluate three of the *Burgess* factors with respect to Dr. Kelly's opinion : "the frequency, length, nature, and extent of treatment; . . . the amount of medical evidence supporting the opinion; . . . [and] whether the physician is a specialist." *Greek*, 802 F.3d at 375. Moreover, although the ALJ suggested that Dr. Kelly's opinion conflicted with other medical evidence in the record, the ALJ gave no indication to what evidence he was referring.

4

### 2. Drs. Wheeler and Peer

Dr. Wheeler, an orthopedist, diagnosed Saunderson with a lateral epicondylitis of the left elbow in October 2014. Docket Item 5 at 265-66; *see also id.* at 21. In January 2015, Dr. Wheeler saw Saunderson "for a follow-up evaluation for lateral elbow pain, left side." *Id.* at 21-22. "For each such visit, Dr. Wheeler checked that [Saunderson] had 100 percent temporary impairment." *Id.* at 22. In May 2016, Dr. Wheeler again saw Saunderson and "noted that [her] wrist range of motion remained markedly limited." *Id.* at 23. He further "stated that [Saunderson] remained disabled." *Id.*

Dr. Peer, a pain-management physician, treated Saunderson from August 2015 through March 2017. *See id.* at 22-24. In November 2016, Dr. Peer opined that Saunderson "had difficulty with lifting, pushing, pulling, and cervical rotation." *Id.* at 23. In March 2017, he "noted that [Saunderson] continued to have a total temporary disability." *Id.* at 24.

The ALJ did "not give significant weight to [Dr. Wheeler's] opinions concerning percentage of temporary impairment" because "[t]hose assessments do not include information concerning the expected duration of such impairment." *Id.* at 22. With respect to Dr. Wheeler's conclusions that Saunderson "had 100 percent temporary impairment" and "remained disabled," the ALJ also noted that disability determinations are reserved to the Commissioner. *Id.* at 22-23. Similarly, the ALJ gave "limited weight to [Dr. Peer's November 2016] assessment . . . as it [did] not quantify the degree of limitation or contain a statement relating to permanency" and did "not give significant weight" to Dr. Peer's March 2017 opinion because it "relate[d] to temporary disability

5

and not permanency." *Id.* at 23-24. The ALJ did not explicitly consider any of the *Burgess* factors in rejecting the opinions of Drs. Wheeler and Peer.[2]

Ignoring the *Burgess* factors and then assigning less-than-controlling weight to the opinions of three treating physicians—Drs. Kelly, Wheeler, and Peer—was procedural error. *See Estrella*, 925 F.3d at 95. "Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [the Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning" less-than-controlling weight to those opinions. *See id.* at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). Here, the remainder of the record contains only bare medical data,[3] which neither this Court nor the ALJ is qualified to interpret. Thus, this Court finds no such assurance.

### B. The ALJ's RFC Determination

What is more, the ALJ improperly relied on his own lay judgment in determining Saunderson's RFC. "Although the RFC determination is an issue reserved for the [C]ommissioner, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Thomas v. Comm'r of Soc. Sec.*, 2019 WL 2295400, at *2 (W.D.N.Y.

---

[2] The ALJ does mention in passing that Dr. Peer is a "pain management physician." Docket Item 5 at 22. But he does not appear to factor that into his assessment, nor does he address the other *Burgess* factors.

[3] The ALJ also considered the opinion of Donna Miller, D.O., a consultative examiner, but he gave only "limited weight" to that opinion. *See* Docket Item 5 at 22.

6

May 30, 2019) (quoting *House v. Astrue*, 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1,

2013)). Thus, "where the transcript contains only diagnostic evidence and no

[supporting] opinion from a medical source about functional limitations . . . , the ALJ

[generally] must recontact [a treating physician], order a consultative examination, or

have a medical expert testify at the hearing." *Skupien v. Colvin*, 2014 WL 3533425, at

*6 (W.D.N.Y. July 16, 2014) (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d

908, 913 (N.D. Oh. 2008)); *see also Thomas*, 2019 WL 2295400, at *2 (explaining that

"an ALJ's determination of RFC without a medical advisor's assessment is not

supported by substantial evidence" (quoting *House*, 2013 WL 422058, at *4)).

Here, the ALJ concluded that Saunderson could perform

> light work as defined in 20 CFR 404.1567(b) except: Such
> work does not require climbing ladders or ropes or using
> scaffolding. Such work does not require more than
> occasional handling and fingering with the left dominant
> hand. Such work does not require extensive or repetitive
> use of the left dominant hand. [Saunderson] must avoid the
> following: concentrated exposure to extreme heat and cold,
> as well as . . . hazardous machinery, unprotected heights,
> and open flames.

Docket Item 5 at 19. The ALJ explained that this RFC "accommodates [Saunderson]'s

cervical disc displacement by providing for work at a light level of exertion that does not

require climbing ladders, ropes, or scaffolding"; "accommodates [Saunderson]'s

ligament tear of her left wrist, status post repair by providing for work that does not

require more than occasional handling and fingering with the left dominant hand, and

does not require extensive or repetitive use of that hand"; and "accommodates her

complex regional pain syndrome by providing for work at a light level of exertion that

allows for the avoidance of concentrated exposure to extreme heat and cold, hazardous

7

machinery, unprotected heights, and open flames." *Id.* at 21. Moreover, in the ALJ's view, Saunderson's "medical records for the period under consideration do not show that she has any impairment of combination of impairments that persisted at a level of severity that would reasonably preclude work within that [RFC]." *Id.* Finally, the ALJ noted that "[a]side from a the implantation of a spinal cord stimulator in May 2017, those records do not show that [Saunderson] received more than conservative care for her chronic pain." *Id.*

But, as explained above, the ALJ did not rely on any medical opinions in formulating Saunderson's RFC. And in the absence of a medical opinion, the ALJ necessarily relied only on his own lay judgment. *See Sherry v. Berryhill*, 2019 WL 441597, at *5 (W.D.N.Y. Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data.").

For example, it is not at all clear how the ALJ was able to determine from the bare medical data that despite Saunderson's "severe . . . cervical disc displacement," Docket Item 5 at 17, she could work at a light level of exertion, which generally requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). It is likewise unclear how the ALJ determined that Saunderson could occasionally "handl[e] and finger[ ] with [her] left dominant hand" notwithstanding her "severe . . . [left-wrist] ligament tear." *See* Docket Item 5 at 17, 21. Similarly, there appears to be no medical basis for the ALJ's

8

conclusion that "avoid[ing] concentrated exposure to extreme heat and cold, hazardous machinery, unprotected heights, and open flames" would allow Saunderson to perform light work despite her "severe . . . complex regional pain syndrome." *See id.*

Moreover, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). Here, there were indeed such deficiencies, and the ALJ therefore was obligated to develop the record regarding Saunderson's functional capacity during the period of disability. *See Sobolewski v. Apfel,* 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history."). For example, as discussed above, the ALJ rejected Dr. Wheeler's and Dr. Peer's opinions simply because they referred only to temporary disability. *See* Docket Item 5 at 22-23. But the ALJ easily could have contacted those physicians to inquire about how long they expected Saunderson's temporary disabilities to persist or whether Saunderson had any permanent limitations.

"[T]he absence of a properly grounded RFC constitutes legal error that requires remand regardless of any underlying raw data." *Thomas*, 2019 WL 2295400, at *2. Here, the ALJ's failure to obtain a medical opinion regarding Saunderson's functional capacity constituted just such an error. *See id.* (remanding where "[a]ll of the records in the case consist of clinical notes that have no medical source statements and no other assessments of plaintiff's exertional and non-exertional abilities," yet "the Commissioner

9

crafted a very specific RFC"); *Perkins v. Berryhill*, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.").

In light of the ALJ's failure to "explicitly consider" the *Burgess* factors before assigning reduced weight to the opinions of Saunderson's treating sources, the ALJ's improper reliance on his own lay judgment to formulate Saunderson's RFC, and the ALJ's failure to fill any gaps in the record, the Court remands this matter. On remand, the ALJ should reconsider the opinions of Saunderson's treating physicians after applying all four *Burgess* factors and develop the medical record with respect to Saunderson's RFC.

## **CONCLUSION**

For the reasons stated above, Saunderson's motion for judgment on the pleadings, Docket Item 7, is GRANTED in part and DENIED in part, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 14, is

DENIED. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: March 3, 2020
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE